**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RODNEY KNOCKUM,<br><br>Plaintiff,<br><br>v.<br><br>COOK COUNTY SHERIFF POLICE DETECTIVE BOHLSEN #934 and DETECTIVE GRAY #975, and COUNTY OF COOK, a Municipal Corp.,<br><br>Defendants. | ) | No. 24 C 10530<br><br>Judge Sara L. Ellis |

**OPINION AND ORDER**

Plaintiff Rodney Knockum filed this civil rights lawsuit against Defendants Cook County Sheriff Police Detectives Bohlsen #934 and Gray #975 (the "Defendant Officers"), and the County of Cook (the "County").[1] In his second amended complaint, Knockum brings claims against the Defendant Officers under 42 U.S.C. § 1983 for deprivation of liberty based on false information in violation of the Fourth Amendment and conspiracy. He also brings an indemnification claim against the County. Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Knockum has sufficiently stated his claims, the Court denies the motion to dismiss.

[1] Knockum does not bring any claims against Detective Dignan #920 in the second amended complaint, and so the Court clarifies that he is no longer a defendant in the case.

## BACKGROUND[2]

### I. Knockum's Second Amended Complaint

On October 11, 2018, Eddie Appleton was shot and killed in Robbins, Illinois. The Defendant Officers investigated Appleton's murder. They learned that earlier in the evening of October 11, Appleton allegedly stole cannabis from Knockum at gunpoint. They arrested Knockum for Appleton's murder on October 12, speculating that Knockum may have returned to the scene and shot Appleton. The Defendant Officers had no eyewitnesses or forensic evidence connecting Knockum to Appleton's murder.

That same day, Robbins police arrested Antoine Rudolph, who had criminal charges pending against him. The Robbins police contacted the Defendant Officers, who transported Rudolph to the Cook County Sheriff's Police headquarters in Markham, Illinois. Rudolph told the Defendant Officers that he heard about the shooting in the neighborhood but that he did not witness it. But the Defendant Officers fabricated a statement for Rudolph to tell prosecutors that he saw Knockum shoot Appleton.

[2] The Court takes the facts in the background section from Knockum's second amended complaint and presumes them to be true for the purpose of resolving Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The Court "may also take judicial notice of matters of public record." *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019). Here, Defendants attach the docket sheet and indictment return sheet in Knockum's state court criminal case, as well as the witness testimony from his criminal trial. In response, Knockum attaches an affidavit from Antoine Rudolph. Knockum argues that the Court cannot take as true any facts in the trial transcript that his second amended complaint contradicts. *See Lietzow v. Vill. of Huntley*, No. 17 C 5291, 2018 WL 6248911, at *2 (N.D. Ill. Nov. 29, 2018) ("But while the Court may recognize a prior judicial act, it cannot rely on the facts in a court record for the truth of the matter asserted. . . . This is especially so when the findings of fact directly contradict the facts asserted in [plaintiff's complaint.]" (citation omitted) (internal quotation marks omitted)). The Court does not find that the additional evidence forecloses Knockum's claims, and so the Court overrules Knockum's objection and considers the arguments the Defendant Officers make in reliance on this additional evidence.

The Defendant Officers listed Rudolph as an eyewitness to the shooting in their police reports and provided Rudolph's false statement to prosecutors. Prosecutors used these statements to charge Knockum with first degree murder. Knockum remained in custody through his trial. On October 18, 2022, Knockum received a not guilty verdict on all counts.

**II. State Court Testimony**

The State called several witnesses during Knockum's trial. Antoinette Grandison lived down the street from where Appleton was murdered and had known both Knockum and Appleton for many years. She testified that on the evening of his murder, Appleton came to her house to buy cigarettes and a can of beer. Approximately fifteen to twenty minutes later, Grandison recalled that Knockum came looking for Appleton, with Knockum stating that Appleton had pulled a gun on Knockum, broken into Knockum's truck, and stolen weed. After Grandison told Knockum that Appleton had left, Knockum told Grandison that if she saw Appleton, she should tell him that Knockum was looking for him. Knockum then left the house, and about twenty minutes later, someone came to Grandison's house with news of Appleton's murder. Grandison admitted that she did not see the shooting or hear gunshots. A former Robbins police officer testified that she spoke with Grandison after the shooting and learned from Grandison that Knockum had been at Grandison's house before the shooting.

Rudolph also testified at Knockum's trial. He explained that he had known both Appleton and Knockum basically his entire life. Rudolph testified that he had spent the afternoon with Appleton but then had left to go to another friend's house sometime between 7 and 8 p.m. He further testified that the following day, Robbins police officers pulled him over and he told them that he heard while at a friend's house that Knockum had shot Appleton. The State then introduced portions of a statement that Rudolph gave to a Cook County Assistant

State's Attorney ("ASA") on October 12, in which acknowledged being with Appleton around 8:30 p.m. on October 11 when Knockum pulled up in his truck with weed for sale. According to Rudolph's statement, Knockum gave Appleton some weed, but Appleton did not pay for it. Rudolph told the ASA that Knockum left but returned later, at which point Knockum got out of his truck with a gun and started walking toward Appleton. Rudolph stated that he heard gunshots and fled. In his statement, Rudolph denied any coercion or threats in connection with the making of his statement. The State also read in portions of Rudolph's grand jury testimony, which aligned with his statement to the ASA. Before the grand jury, Rudolph again indicated that he voluntarily spoke with police the day after the shooting and that the police did not threaten him or promise him anything for his statements. Rudolph also told the grand jury that he did not have any criminal cases. During Knockum's trial, cross-examination revealed that Rudolph did have a pending felony case at the time he testified before the grand jury.

**III. Rudolph's Affidavit**

In an affidavit dated May 12, 2026, Rudolph states that he did not see Knockum shoot Appleton on October 11, 2018. He explains that on October 12, Robbins police officers took him into custody and told him that if he did not implicate Knockum in Appleton's murder, he would go to jail and the police would impound his wife's van. When he later told the Defendant Officers that he had not seen Appleton's shooting, the Defendant Officers told him to say that he saw Knockum walk up and shoot Appleton, again threatening Rudolph that otherwise he would go to jail for selling weed and his wife would lose her van. According to Rudolph, Detective Grey also promised to help Rudolph financially if he implicated Knockum in the shooting. After Rudolph implicated Knockum, Detective Grey took Rudolph out to eat and gave him money to pay his cell phone bill.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Fabrication of Evidence

To state a Fourth Amendment claim for fabrication of evidence, Knockum must allege that the Defendant Officers knowingly, intentionally, or with reckless disregard for the truth made false statements that were necessary to the probable cause determination for his pretrial detention and criminal prosecution. *Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019). The Defendant Officers argue that the underlying criminal record makes Knockum's claim implausible. First, they contend that they had sufficient probable cause to arrest and detain Knockum before Rudolph made any statements based on Grandison's observation of Knockum before Appleton's killing. Alternatively, they argue that Knockum cannot overcome the

presumption of probable cause that attached after his probable cause hearing and indictment. The Court examines these arguments in turn.

**A. Grandison's Statements**

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). A police officer has probable cause to arrest or detain a person if, at the time of the arrest or detention, the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "[P]robable cause to prosecute exists where the facts 'would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged.'" *Kelley-Lomax v. City of Chicago*, --- F.4th ----, 2026 WL 2350245, at *2 (7th Cir. 2026) (quoting *Williams v. City of Chicago*, 733 F.3d 749, 759 (7th Cir. 2013)). In Illinois, "[a] person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death: (1) he or she either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or (2) he or she knows that such acts create a strong probability of death or great bodily harm to that individual or another." 720 Ill. Comp. Stat. 5/9-1.

The Defendant Officers argue that probable cause existed even without considering Rudolph's allegedly fabricated statement. *See Washington v. City of Chicago*, 98 F.4th 860, 874 (7th Cir. 2024) ("Even if the prosecutors had relied exclusively on the police detectives' descriptions of events, which we assume included the misrepresentations and omissions

discussed above, there remained enough uncontested, reliable evidence to support probable cause as a matter of law."); *Young v. City of Chicago*, 987 F.3d 641, 645 (7th Cir. 2021) (allegations of falsified evidence did not undermine the basis for the plaintiff's detention and so could not support a Fourth Amendment claim). They rely on Grandison's testimony at trial that Knockum came to her house looking for Appleton and told her that Appleton had pulled a gun on him and stolen his cannabis. According to the Defendant Officers, this information gave them probable cause to detain Knockum. *See Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015) ("Probable cause can be based on a single identification from a credible eyewitness.").

But the Court cannot find that Grandison's statements alone sufficed to establish probable cause to detain or prosecute Knockum for first degree murder. Knockum alleges that no eyewitness or forensic evidence identified him as the shooter. And although the Defendant Officers ask the Court to treat Grandison as an eyewitness, she admitted that she did not see the shooting. And while she may have testified about her interactions with Knockum at his trial, the only information that the trial transcript indicates officers obtained from her before they detained Knockum was that Knockum had been at her house before the shooting. While this may have provided the Defendant Officers with a lead on a suspect, Grandison's statements do not overcome Knockum's contention that absent Rudolph's allegedly fabricated statement, probable cause did not exist to detain and charge him for first degree murder. Although discovery may show otherwise, at this point, the Court cannot dismiss Knockum's claim based solely on Grandison's identification of Knockum as someone who had visited her house around the time of the shooting.

### B. Presumption of Probable Cause

Next, the Defendant Officers argue that Knockum cannot overcome the presumption of probable cause that attached after his probable cause hearing and indictment. "In civil litigation like this case, a rebuttable presumption of probable cause arises after a judicial determination of probable cause." *Washington*, 98 F.4th at 863. But Knockum argues that he has sufficiently alleged facts to overcome this presumption because he claims that the Detective Officers knowingly presented Rudolph's false statements to the judge and the grand jury and no other evidence tied him to the murder. *See id.* ("To overcome this presumption, plaintiffs must show that the officer who sought the warrant [1] knowingly or intentionally or with a reckless disregard for the truth, made false statements to the judicial officer, and [2] that the false statements were necessary to the judicial officer's determination that probable cause existed for the arrest." (citation omitted) (internal quotation marks omitted)). The Defendant Officers contend that Rudolph's testimony at Knockum's criminal trial contradicts Knockum's allegations because Rudolph agreed that he provided voluntary statements that had not been influenced by law enforcement and that those statements indicated that he saw Knockum shoot Appleton. Knockum disputes the truthfulness of Rudolph's statements to the ASA and grand jury, however, and the Court cannot resolve factual disputes or make credibility determinations at the motion to dismiss stage. *See Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018) ("Although a court may generally take judicial notice of public records, under Federal Rule of Evidence 201, a court may judicially notice only a fact that is not subject to reasonable dispute."); *Chriswell v. Vill. of Oak Lawn*, No. 11 C 00547, 2013 WL 5903417, at *1 (N.D. Ill. Nov. 4, 2013) (unreasonable seizure claim survived motion to dismiss because "claim involve[d] a fact dispute and credibility determination that [could not] be made on a motion pursuant to 12(b)"), *aff'd sub nom. Chriswell*

*v. O'Brien*, 570 F. App'x 617 (7th Cir. 2014). The Court therefore will not dismiss Knockum's claim on this ground.

**II. Conspiracy**

To state a conspiracy claim under § 1983, a plaintiff must allege that (1) the defendants reached an agreement to deprive him of his constitutional rights and (2) the defendants took overt acts in furtherance of actually depriving him of those rights. *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (citing *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988)). A plaintiff cannot state a conspiracy claim without an underlying constitutional violation. *See Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018) (for a conspiracy claim, a plaintiff "must show an underlying constitutional violation and demonstrate that the defendants agreed to inflict the constitutional harm" (citation omitted) (internal quotation marks omitted)); *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) ("We note at the outset that conspiracy is not an independent basis of liability in § 1983 actions.").

The Defendant Officers argue that Knockum has not sufficiently pleaded a conspiracy claim because he has only included a "conclusory and formulaic recitation of the elements of a conspiracy." Doc. 40 at 12. But the Defendant Officers ask too much of Knockum at this stage: "it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002); *see also Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012) ("Under *Twombly*, all plaintiff needed to allege was a plausible account of a conspiracy."). Knockum meets these requirements, alleging that the Defendant Officers engaged in concerted action to frame him for Appleton's murder and deprive him of his constitutional rights by fabricating evidence. *See Sanchez v. Vill. of Wheeling*, No. 19 C 2437,

2020 WL 490964, at *8 (N.D. Ill. Jan. 30, 2020) (plaintiff stated a viable conspiracy claim by identifying the parties to the conspiracy, the general purpose of coercing false statements to obtain the plaintiff's conviction, and the approximate dates of the conspiracy). At this stage, then, the Court will allow Knockum to proceed with his conspiracy claim against the Defendant Officers.

## III. Indemnification

Finally, the County asks that the Court dismiss the indemnification claim Knockum brings against it, noting that the claim cannot proceed without an underlying substantive claim against the County's employees. But because the Court allows Knockum to proceed on his claims against the Defendant Officers, the County must remain in the case for indemnification purposes.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss Knockum's second amended complaint [40].

Dated: August 26, 2026

SARA L. ELLIS
United States District Judge